UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

In Re:                )
                      )     **JUDGE RICHARD L. SPEER**
Jason/Lindsey Jordan  )
                      )     Case No. 09-35087
    Debtor(s)         )
                      )
                      )

## DECISION AND ORDER

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case and the Debtors' objection thereto. At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to thoroughly consider the issues raised by the Parties. The Court has now had this opportunity and finds, for the reasons set forth herein, that the Motion of the United States Trustee should be Granted.

## BACKGROUND

On July 28, 2009, the Debtors, Jason and Lindsey Jordan (hereinafter the "Debtors"), sought relief in this Court pursuant to the provisions set forth in Chapter 7 of the United States Bankruptcy Code. At the time they filed their petition, the Debtors had two young children, and represented that they had $157,045.42 in unsecured debt. Of their unsecured debt, $109,096.00 constituted student-loan obligations; the Debtors remaining unsecured debt consisted of consumer obligations, with credit-card transactions predominating.

After they filed their petition, the United States Trustee (hereinafter the "UST"), acting in accordance with his statutorily prescribed duties, 28 U.S.C. § 586, filed a Motion in this Court, seeking the dismissal of the Debtors' bankruptcy case. It is this matter which is now before the Court. The adjudication of this type of matter, involving the dismissal of a debtor's case, affects both

In re: Jason and Lindsey Jordan
Case No. 09-35087

the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship. As such, a motion brought by a party to dismiss a case is deemed by bankruptcy law to be a core proceeding. 28 U.S.C. §§ 157(b)(2)(J)/(O). Accordingly, on the Motion brought by the UST, this Court has jurisdiction to enter final orders and judgments. 28 U.S.C. §§ 157(b)(1).

## DISCUSSION

As the statutory basis for his Motion to Dismiss, the UST cites to 11 U.S.C. § 707(b)(1) and § 707(b)(3). Regarding these provisions, § 707(b)(1) is a foundational provision, providing for dismissal if it is determined that granting relief to a debtor under Chapter 7 of the Code would be abusive. Section § 707(b)(3) then provides a methodology by which to assess the existence of abuse under § 707(b)(1). In relevant part, these provisions provide:

> (b)(1) After notice and hearing, the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.
>
> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

In seeking to have the Debtors' case dismissed in accordance with these provisions, the UST did not make any allegations of "bad faith" pursuant to § 707(b)(3)(A), but instead sought dismissal based solely on the methodology contained in § 707(b)(3)(B): the totality of the Debtors' financial

Page 2

In re: Jason and Lindsey Jordan
Case No. 09-35087

circumstances. For this position, the UST relies solely on his contention that "the Debtors have the ability to repay a portion of their debts." (Doc. No. 13, at pg. 1).

Consistent with the position advocated by the UST, a debtor's ability to repay their unsecured debts has developed to become a prime, and often dispositive consideration when determining whether, under the 'totality of the circumstances' standard of § 707(b)(3)(B), a case should be dismissed for abuse. *In re Brenneman*, 397 B.R. 866, 870-71 (Bankr. N.D.Ohio 2008). In *In re Krohn*, the Sixth Circuit Court of Appeals first cited this consideration with approval, explaining:

> In determining whether to apply § 707(b) to an individual debtor, then, a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or instead is 'honest,' in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is 'needy' in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets.
>
> Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease.

886 F.2d 123, 126 (6th Cir. 1989) (internal citation omitted). According to the Court's decision in *In re Krohn*, looking at a debtor's ability to pay when assessing abuse under § 707(b) is "intended to uphold creditors' interests in obtaining repayment where such repayment would not be a burden." *Id.* (internal quotations omitted), *citing In re Kelly*, 841 F.2d 908, 914 (9th Cir. 1988).

A debtor's ability to repay their debts is normally ascertained by reference to the amount of "disposable income" the debtor has available, and whether that income could adequately fund a Chapter 13 plan. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 435 (6th Cir. 2004). For purposes of

Page 3

In re: Jason and Lindsey Jordan
Case No. 09-35087

bankruptcy law, the term "disposable income" is defined, generally, as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. *Id., citing* 11 U.S.C. § 1325(b)(2). In assessing their 'disposable income,' the UST contends that three aspects of the Debtors' financial situation demonstrate their ability to repay their unsecured debts.

First, the UST, pointing to the revised financial figures submitted by the Debtors, wherein they estimated their 'disposable income' to be $443.97 per month, contends that this income constitutes an available source of funds which could be used to repay their creditors. (Doc. No. 17). Second, the UST called attention to the fact that the Debtors' 'disposable income' calculation already accounted for an allocation of $660.70 to repay a particular class of creditors – those holding student-loan debts – resources it contends should be allocated to the Debtors' entire body of creditors. Finally, the UST elicited evidence from the Debtors that they have traditionally received tax refunds – *e.g.*, $4,500.00 for the 2008 tax year – resources he again contends constitute an available source of funds which the Debtors could use to repay their creditors.

The first point raised by the UST is reasonable. According to their own financial figures, the Debtors have a surplus in their monthly budget. Debtors with a surplus in their monthly budget may be expected to devote those financial resources toward the repayment of their unsecured debt. To hold otherwise, would break with this fundamental tenant of bankruptcy law: that while bankruptcy law is meant to afford a debtor a fresh start, it is abuse for a debtor to seek to use the bankruptcy process to obtain a head start. *See In re Zick*, 931 F.2d 1124, 1129-30 (6th Cir. 1991). At the same time, dismissal under § 707(b)(3)(B) is not necessarily warranted simply because a debtor has 'disposable income' available. *In re Stewart*, 383 B.R. 429, 433-34 (Bankr. N.D. Ohio 2008).

At its core, dismissal based upon a totality of the circumstances assessment under § 707(b)(3)(B) is a fluid concept, and is therefore not beholden to a 'snapshot' of those financial

Page 4

In re: Jason and Lindsey Jordan
Case No. 09-35087

circumstances as they existed on the date a debtor commences their bankruptcy case. *In re Blankenship*, 398 B.R. 457, 461 (Bankr. N.D.Ohio 2008). The anticipation of events to occur in the future, so long as not based on overt speculation, may be therefore considered. *Id.* It is also true that the Court, as the final arbitrator of a debtor's 'disposable income,' is permitted to make adjustment in a debtor's enumerated expenses so as to ensure that the claimed expense is reasonable. *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D.Ohio 2007). Normally, this will entail a downward adjustment in a debtor's claimed expenses; yet where equity compels, the Court may also adjust a debtor's claimed expenses upward when it is apparent that a particular expense does not afford the debtor a basic level of support. *See In re Stewart*, 383 B.R. at 434.

Set within this framework, the estimate put forth by the Debtors, placing their 'disposable income' at $443.97, seems overtly optimistic for two reasons. First, the Debtors, whose household consists of four members, claimed only $450.00 a month for food. The Court has serious doubts that this figure – averaging just $3.75 per person, per day[1] – is realistic. Put in a different context, at the time the Debtors filed for bankruptcy relief, the 'means test' of § 707(b)(2) set forth a $752.00[2] monthly food allowance for a family of four. And while not strictly applicable, this Court has used the 'means test' of § 707(b)(2), which establishes objective baselines for a debtor's reasonable monthly expenses, as a source of guidance when weighing whether an expense claimed by a debtor is reasonable. *See, e.g., In re Harter*, 397 B.R. 860, 865 (Bankr. N.D.Ohio 2008).

Future events concerning the Debtors' household size also become relevant to the second reason the 'disposable income' calculation performed by the Debtors appears too optimistic. At the Hearing held on the UST's Motion to Dismiss, it came to light that the Debtors are soon expecting

---

[1] Based on a 30 day month.

[2] http://www.justice.gov/ust/eo/bapcpa/20090315/bci_data/national_expense_standards.htm.

Page 5

In re: Jason and Lindsey Jordan
Case No. 09-35087

their third child. It is beyond doubt that this addition to the Debtors' household will create additional expenses. Consequently, given this fact, plus the Debtors' likely underestimate of their monthly food budget, the Court finds that, contrary to the position taken by the UST, the $443.97 'disposable income' figure put forth by the Debtors should be disregarded in assessing their ability to repay their debts.

Beyond the $443.97 'disposable income' figure put forth by the Debtors, it is also the position of the UST that the Debtors' have the ability to repay their debts because their monthly budget currently accounts for a $660.70 payment toward student-loan obligations. According to the UST, this allocation constitutes a financial resource which could be utilized to pay the Debtors' unsecured creditor body as a whole, as opposed to just a particular class of creditors. The Court agrees.

When defending against an action to dismiss under § 707(b)(3), many debtors appear to operate under the assumption that student-loan obligations are entitled to preferential treatment – *i.e.*, a debtor may continue to budget their financial resources so as to fully pay the contractual amount due on an educational debt, while not doing the same for their other unsecured creditors. This approach, however, apparently arising from the nondischargeable character of the loan and/or the false assumption that educational debts constitute priority claims, has not been followed by this Court.

Instead, this Court has started with the assumption that all of a debtor's unsecured creditors are entitled to be treated equally. Thus, as explained by the Court in *In re Kaminski*:

> . . . in the context of a § 707(b)(3) action, this Court has not viewed favorably debtors who seek to allocate their financial resources to fully pay a student loan while not doing the same for their other unsecured creditors. The reason: it goes against the core principle of bankruptcy that similarly situated

Page 6

In re: Jason and Lindsey Jordan
Case No. 09-35087

> creditors are entitled to an equal distribution of estate assets. The Debtors' position, that payments on student-loan obligations are entitled to special treatment because, being nondischargeable debts, they are not voluntary has been rejected by the Court. . . . .
>
> The fact . . . that an obligation to pay a debt will survive bankruptcy, does not, on that basis alone, mean that a debtor has the right to treat the claim differently. Otherwise, all nondischargeable debts would be entitled to favorable treatment, including those debts which arise from a debtor's wrongful conduct – *e.g.*, fraud, embezzlement and larceny. 11 U.S.C. § 523(a)(2)/(4). To be sure, in some instances a creditor holding a nondischargeable claim will also be entitled to receive favorable treatment for its claim. For example, tax debts are generally both nondischargeable and entitled to priority treatment. 11 U.S.C. § 507(a)(8); § 523(a)(1).
>
> Yet, the two matters-nondischargeability and the favorable treatment of a creditor's-claim are neither related nor dependent on the other. Instead, each is based upon its own statutory authority.
>
> It should also be noted in this regard that the Debtors' statement-that student loans are treated as a priority debt by this court and all other federal courts – is simply not correct. Nowhere in 11 U.S.C. § 507, which sets forth priority claims in bankruptcy, are student loans referenced.

387 B.R. 190, 197 (Bankr. N.D.Ohio 2008) (internal quotations and citations omitted). *See also In re Reimer*, No. 07-32787, 2008 WL 495537 (Bankr. N.D.Ohio 2008).

This prohibition, against a debtor favoring their student-loan debts, however, is not absolute. When assessing a debtor's ability to pay for purposes of § 707(b)(3), this Court has permitted debtors to fully expense their monthly student-loan payments, while not doing the same for the other unsecured creditors, when two conditions were present: (1) there existed a large student-loan obligation which, given its nondischargeable character, would continue to increase in principal during the duration of a Chapter 13 plan; and (2) the distribution to the debtor's other unsecured creditors would be minimal. *In re Brenneman*, 397 B.R. 866, 874 (Bankr. N.D.Ohio 2008), *citing In re Thurston*, Case No. 07-35092, Slip Copy, 2008 WL 3414138 (Bankr.N.D.Ohio 2008).

Page 7

In re: Jason and Lindsey Jordan
Case No. 09-35087

In this matter, while the first condition is met, with the Debtors having more than $100,000.00 in student-loan debt, the second condition is not satisfied. If the Debtors were to equally allocate, in a 60-month Chapter 13 plan of reorganization, their present student-loan payment of $660.70 per month toward all of their unsecured creditors, the Debtors' other non-student loan creditors, constituting more than 30% of the unsecured creditor body, would receive more than a minimal payment. In this regard, 30% of $660.70 taken over 60 months amounts to a distribution of $11,892.60.

It also cannot be overlooked that this distribution would not cause any disruption in their household budget, with the Debtors acknowledging that they have the present ability to pay their accruing student-loan obligations. The more than minimal nature of the distribution to the Debtors' non-student loan creditors is also enhanced by the third point raised by the UST.

For its position that the Debtors have the ability to repay their debts, the UST pointed to the evidence elicited from the Debtors which revealed that they have traditionally been entitled to tax refunds, most recently receiving a refund of approximately $4,500.00 for the 2008 tax year. This position of the UST, that tax refunds constitute a financial resource available for unsecured creditors, is employed by this Court. The reason: "Tax refunds arise as the result of a taxpayer's overpayment of their tax liability." *In re Blankenship*, 398 B.R. 457, 462 (Bankr. N.D.Ohio 2008). Therefore, "tax refunds, although not available on a monthly basis, are a source of income for a debtor" and "so long as there is the realistic prospect of similar refunds in the future, tax refunds will be included in a determination of the Debtor's net income for purposes of § 707(b)." *Id.*

In this matter, while the Debtors contend that the receipt of future income tax refunds is not assured, no substantive evidence was introduced that the Debtors would not continue to receive tax refunds in the future. In fact, given that the Debtors are soon expecting their third child, thereby increasing their exemptions, the likelihood of future tax refunds seems very probable. Moreover, if

Page 8

In re: Jason and Lindsey Jordan
Case No. 09-35087

it ultimately proves to be the case, and the Debtors find themselves with a tax deficiency, Chapter 13 plans of reorganization are sufficiently malleable to handle such contingencies.

In conclusion, the UST has, for two reasons, sustained his burden of showing that the Debtors have an ability to repay their debts. First, the Debtors have the ability to reallocate the financial resources which they are presently dedicating to the repayment of their student-loan obligations toward the repayment of their creditor body as a whole. Second, the tax refunds the Debtors are likely to receive in the future constitute a source of income which may be used to repay their unsecured creditors.

Beside vague statements concerning the tightness of their budget, the Debtors offered no material evidence to refute this position. Moreover, what additional evidence exists tends to bend toward dismissal under § 707(b)(3)(B). First, the Debtors are young and from all appearances in good health. Both of the Debtors are also employed, and from what the Court could glean, the Debtors appear to have good health insurance. Finally, it cannot be ignored that the Debtors, by their own admission, were not forced to file bankruptcy because of unforeseen or catastrophic events, but rather filed bankruptcy because of a long and continuous accumulation of consumer debts. *See In re Krohn*, 886 F.2d at 126 (factors bearing on dismissal under § 707(b) include whether bankruptcy was precipitated by unforeseen or catastrophic events and whether the debtors have stable employment).

Accordingly, for all these reasons, the Court finds the Motion of the UST to Dismiss for Abuse pursuant to 11 U.S.C. § 707(b)(1) and § 707(b)(3) to be well taken. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Page 9

In re: Jason and Lindsey Jordan
Case No. 09-35087

    Accordingly, it is

    **ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Monday January 18, 2010, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

    **IT IS FURTHER ORDERED** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

    Dated: January 8, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 10

# CERTIFICATE OF SERVICE

Copies were mailed this 8th day of January, 2010 to:

Jason C. Jordan
4410 Weckerly Rd
Monclova, OH 43542

Lindsay J Jordan
4410 Weckerly Rd
Monclova, OH 43542

Rebecca L West-Estell
316 N Michigan, #800
Toledo, OH 43604

Linda Maria Battisti
201 Superior Ave, #441
Cleveland, OH 44114

Louis J Yoppolo
300 Madison Ave, #1200
Toledo, OH 43604

/s/Diana Hernandez
Deputy Clerk, U.S. Bankruptcy Court